**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

**JESSE GUZMAN,**

      Plaintiff,

      v.

**USAA FEDERAL SAVINGS BANK, et al.,**

      Defendants.

CASE NO. 3:23 CV 1193

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND
ORDER**

### Introduction

Currently pending before the Court are both Defendant Nationstar Mortgage LLC dba Mr. Cooper's ("Nationstar") Motion for Judgment on the Pleadings (Doc. 20) and Defendant USAA Federal Savings Bank's ("USAA") Motion to Dismiss (Doc. 17) Plaintiff Jesse Guzman's Amended Complaint (Doc. 15), which alleges violations under the Real Estate Settlement Procedures Act of 1974 ("RESPA") and state law consumer claims. Both motions are fully briefed and decisional. Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1367. For the following reasons, the Court denies both motions.

### Background[1]

Original Loan

On August 26, 2016, Plaintiff and his now ex-wife, Kelly, obtained a note from USAA, secured by a mortgage on Plaintiff's home in Toledo, Ohio (the note and mortgage collectively referred to hereinafter as the "Loan"). (Doc. 15 at ¶¶ 1, 19, 24). From the inception of the Loan,

---

1. This section contains a summary of the facts based on the allegations in the Amended Complaint and the documents attached thereto.

USAA contracted with Nationstar to act as the subservicer of the Loan. *Id.* at ¶¶ 6, 25. Plaintiff alleges USAA was the master servicer on the Loan. *Id.* at ¶ 4. Later, on August 22, 2022, USAA assigned the mortgage to Nationstar. *Id.* at ¶ 24; *see* Doc. 15-1.

2020-2021 Forbearance

In 2019 and 2020, Plaintiff experienced financial difficulties due to his divorce and the COVID-19 pandemic, so he sought mortgage loan assistance. (Doc. 15 at ¶ 26). Plaintiff was approved for a forbearance effective from September 1, 2020, to May 1, 2021. *Id.* at ¶ 27.

Attempt to Purchase New Home with New Loan

Plaintiff planned to take advantage of Defendants' forbearance plan, become current on the Loan, and move to a new home. *Id.* at ¶ 83.  Plaintiff does not provide a date, but at some point, he states Defendants gave him conflicting statements regarding his eligibility for a new loan. *Id.* at 84. Defendants informed him that USAA would give him a new loan; based on this information, Plaintiff listed the Property for sale. *Id.* Plaintiff received an offer for $210,000.00 and intended to sell; however, Defendants then told him he must first modify the Loan and make varying amounts of monthly payments to be eligible for the new loan. *Id.* As a result, Plaintiff did not accept the offer to sell his home. *Id.*

Plaintiff desired to move into a one-story house, which was directly next to the Property, to help care for his ailing parents who were confined to wheelchairs. *Id.* at ¶ 85. Plaintiff did not purchase the home after the seller backed out due to the delay. *Id.* at ¶ 86. After this, Plaintiff discovered Defendants' loan officer did not lock his interest rate, which Plaintiff claims caused his monthly payment to exceed his allowable debt-to-income ratio. *Id.* As a result, Plaintiff worked with another mortgage company to secure a mortgage for the purchase of a new home. *Id.* at ¶ 87. The new mortgage company requested written confirmation that showed Plaintiff was on a

forbearance plan during the Loan modification process. *Id.* Plaintiff alleges Defendants failed to provide such confirmation despite promises to do so, which caused further delay. *Id.* Plaintiff's Amended Complaint states "The mortgage company would have approved the new loan with this document, however, without the document, Guzman could not purchase a new home." *Id.*

May 2021 Loss Mitigation Application

On May 19, 2021, Plaintiff submitted a loss mitigation application (the "May 2021 Application") to Defendants. *Id.* at ¶ 29; (Doc. 15-2, at 2-13). On May 21, 2021, Defendants sent Plaintiff an "incomplete notice" requesting additional documents; this notice contained a letterhead identifying both USAA and Nationstar, and a USAA signature line. (Doc. 15 at ¶ 32; Doc. 15-2, at 14-16).[2] On May 28, 2021, Plaintiff submitted the requested documents. (Doc. 15 at ¶ 33). Plaintiff called Defendants the following day to confirm receipt of the documents. *Id.* at ¶ 34.

On June 2, 2021, Defendants sent Plaintiff correspondence indicating the May 2021 Application was complete; however, on or about the same day, Defendants sent another correspondence stating the May 2021 Application was incomplete and that Plaintiff must provide a signed tax return to complete it. Plaintiff claims the June 2 notice stated Defendants had everything else they required to complete the Application and that those documents did not expire. *Id.* at ¶¶ 35-36; (Doc. 15-2, at 20-23). Defendants' June 2 letter confirming receipt of the May 2021 Application stated, "[i]f we determine at a later date that we need additional information to complete our evaluation of your application, we will request the additional information from you and provide you with a reasonable opportunity to submit it." (Doc. 15-2, at 17). Plaintiff

---

2. Plaintiff attaches several documents to his Amended Complaint which are dated from May 19, 2021, through April 8, 2022, all containing a USAA letterhead, email address, physical address, and signatures from USAA. *See* Docs. 15-2 through 15-8.

subsequently submitted a signed copy of his tax returns, which he alleges he had already done. (Doc. 15 at ¶ 37).

Plaintiff tried to contact his designated single point of contact, but she routinely failed to answer or return his calls. *Id.* at ¶ 38. On June 10, 2021, Plaintiff tried to contact Defendants' customer service department but could not reach anyone after an extended wait. *Id.* at ¶ 39. On June 18, 2021, Defendants sent Plaintiff correspondence denying him a permanent modification. *Id.* at ¶ 40; (Doc. 15-2, at 24-30).

On June 23, 2021, Plaintiff received foreclosure paperwork, and Defendants called to notify him they intended to continue with the foreclosure process. (Doc. 15 at ¶ 41). On June 30, 2021, during a phone call with Defendants' loss mitigation department, Defendants told Plaintiff they were not pursuing foreclosure, and he was eligible for another three-month COVID forbearance. *Id.* at ¶ 42. During a subsequent phone call, Plaintiff's point of contact told him, "Defendants' decision to deny his request for a permanent loan modification was based on Defendants' failure to properly calculate his monthly expenses. Upon this discovery, Defendants then reopened the loss mitigation process." *Id.* at ¶ 43. Plaintiff does not provide a date on which this phone call occurred.

On August 29, 2021, Defendants requested Plaintiff resubmit the same forms he completed for his May 2021 Application. *Id.* at ¶ 44; (Doc. 15-2, at 31-42). Plaintiff submitted the documents on September 9, 2021. (Doc. 15 at ¶ 45).

On October 13, 2021, Defendants sent another request that Plaintiff resubmit the same forms he completed with his May 2021 Application for a "third time". *Id.* at ¶ 48; (Doc. 15-2, at 43-54).

On October 18, 2021, Plaintiff contacted Defendants to inquire why they refused to acknowledge the forms he uploaded; Defendants instructed him to email the documents to a USAA email address, which Plaintiff alleges he did that day. (Doc. 15 at ¶ 49). On October 26, 2021, Defendants sent another incomplete notice requiring additional documents to complete his application. *Id.* at ¶ 50; (Doc. 15-2, at 55-57).

On November 2, 2021, Plaintiff contacted Defendants and was told additional documents were required. (Doc. 15 at ¶ 51). After Plaintiff explained he already submitted the documents, a Nationstar employee told him, "Nationstar employees could not 'pull' those documents and required new copies." *Id.* The Amended Complaint continues, "[t]he Nationstar employee informed Guzman for the first time that Nationstar employees were not permitted to view documents submitted to USAA's side of the website and Nationstar employees received only a summary of the loss mitigation process." *Id.* Plaintiff asked the Nationstar employee, "[s]o all my documents that I uploaded went to the USAA side and you guys will never see them?", to which the employee replied, "Exactly." *Id.*

On November 17, 2021, Defendants sent Plaintiff another incomplete notice. *Id.* at ¶ 52; (Doc. 15-2, at 58-60).

On November 18, 2021, Defendants sent Plaintiff correspondence that indicated the Application was complete. (Doc. 15 at ¶ 53; Doc. 15-2, at 61-63). On December 21, 2021, Defendants offered Plaintiff a standard modification, and Plaintiff accepted on the same day. (Doc. 15 at ¶¶ 54-55); (Doc. 15-2 at 64-73).

Loan Modification Agreement

On December 27, 2021, Defendants sent Plaintiff a Loan Modification Agreement (the "LMA"). (Doc. 15 at ¶ 56). On February 18, 2022, Plaintiff and Kelly executed the LMA and sent

it to Defendants. *Id.* at ¶ 57; (*see* Doc. 15-4). On February 22, 2022, Defendants sent Plaintiff a letter and included a new copy of the LMA because the executed LMA was not appropriately notarized. (Doc. 15 at ¶ 58; *see* Doc. 15-5).

Plaintiff states Kelly was uncooperative and refused to sign the second LMA. (Doc. 15 at ¶ 60). Plaintiff explained Kelly's refusal to Defendants, who mentioned Kelly's signature was not required because he previously provided Defendants with his divorce decree. *Id.* at ¶ 61.

On March 11, 2022, Plaintiff executed two new copies of the LMA in the presence of Defendants' mobile notary, which were returned to Defendants by the mobile notary. *Id.* at ¶ 62; (*see* Doc. 15-6). On March 15, 2022, Defendants sent Plaintiff another deficiency notice with two new LMA copies and explained that Kelly's signature was required. (Doc. 15 at ¶ 63); (*see* Doc. 15-7). Plaintiff tried to get Kelly to sign the new LMA but was unsuccessful again. (Doc. 15 at ¶ 66).

On April 7, 2022, Plaintiff called Defendants to finalize the LMA and was told that the problem with the second executed LMA was not related to Kelly's failure to sign the document, but rather the failure of Defendants' mobile notary to properly notarize it. *Id.* at ¶ 65. On April 8, 2022, Defendants informed Plaintiff they withdrew the LMA because they did not receive the executed documents. *Id.* at ¶ 66; *see* Doc. 15-8.

On June 21, 2022, Plaintiff submitted a reinstatement payment, but before doing so, he called Defendants to ask whether his payment would be reported as late to credit reporting agencies and claims Defendants assured him the payment would not be reported as late; however, after the payment, Plaintiff discovered a negative delinquency on his credit report. (Doc. 15 at ¶ 67).

On August 22, 2022, USAA assigned the Loan to Nationstar. *Id.* at ¶ 24; *see* Doc. 15-1.

Notice of Errors to USAA and Nationstar

On November 7, 2022, Plaintiff, through counsel, sent two Requests for Information ("RFI") to Nationstar under 12 C.F.R. § 1024.36 seeking information concerning the Loan. *Id.* at ¶ 69; (*see* Doc. 15-9).

On June 2, 2023, Plaintiff, through counsel, sent a notice of error to USAA under 12 C.F.R. § 1024.35 asserting USAA:

a. . . . failed to exercise reasonable diligence to complete the [May 2021] Application;

b. . . . failed to properly notarize or otherwise implement the LMA; and

c. . . . improperly reported negative credit information to credit reporting agencies or otherwise misrepresented to Guzman that they would not do so.

(Doc. 15 at ¶¶ 70-71); (Doc. 15-10, at 2-7).

Plaintiff alleges USAA received the notice of error on June 9, 2023. (Doc. 15 at ¶ 72); (Doc. 15-10, at 8-10). Plaintiff alleges USAA failed to acknowledge receipt nor respond substantively. (Doc. 15 at ¶¶ 73-74).

On June 2, 2023, Plaintiff, through counsel, sent a notice of error to Nationstar alleging the same errors as above. *Id.* at ¶ 75-76; (Doc. 15-11, at 2-7). Plaintiff alleges Nationstar received the notice of error on June 7, 2023. (Doc. 15 at ¶ 77; Doc. 15-11, at 8-10).

On June 14, 2023, Nationstar sent Plaintiff a timely response to the notice of error. The response included: (1) Nationstar is "unable to speak on the servicing of the prior servicer", (2) an overview of Plaintiff's loss mitigation application timeline, and (3) general information regarding how credit is reported. (Doc. 15-12, at 5-6). Plaintiff points out that Nationstar's response did not indicate that Nationstar would provide a further response to the notice of error. (Doc. 15, at ¶ 78-79); *see* Doc. 15-12.

On August 14, 2023, Nationstar sent an untimely second response to the notice of error. (Doc. 15 at ¶ 80); *see* Doc. 15-13. The second response supplemented the first and denied that it committed errors related to Plaintiff's letter. (Doc. 15-13, at 2). The letter: (1) states the process Nationstar took to evaluate Plaintiff's loss mitigation application and subsequent denial, (2) disputes Plaintiff's claims that Nationstar told him Kelly's signature was not required, and (3) disagrees that it improperly reported Plaintiff's Loan as delinquent. *Id.* at 3-4.

On August 14, 2023, Plaintiff sent a request for copies of documentation and information under 12 C.F.R. § 1024.35(e)(4) to Nationstar. He sought copies of documentation upon which Nationstar claimed through its second response that no errors had occurred. (Doc. 15 at ¶ 81; *see* Doc. 15-14).

## STANDARD OF REVIEW

In reviewing a motion to dismiss, the Court tests the complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court is required to accept the factual allegations stated in the complaint as true, while viewing the complaint in a light most favorable to the non-moving party. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). The complaint "must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quotation marks omitted). A party must make "a showing, rather than a blanket assertion of entitlement to relief" and "[f]actual allegations must be enough to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the party pleads factual

8

content that allows the court to draw the reasonable inference the defendant is liable for the alleged misconduct." *Id.* at 556; *Iqbal*, 556 U.S. at 678. However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation". *Id.* (quoting *Twombly*, 550 U.S. at 555).

A motion for judgment on the pleadings under Rule 12(c) is generally reviewed under the same standard as a Rule 12(b)(6) motion. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir.2001).

In deciding a motion to dismiss under Rule 12(b)(6), the Court normally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. However, as the Sixth Circuit has held, this rule has several exceptions. It is well established that, in ruling on a Rule 12 dispositive motion, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## DISCUSSION

Plaintiff alleges Nationstar and USAA violated provisions of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.* and its implementing regulation, Regulation X, 12 C.F.R. § 1024. The Amended Complaint asserts five causes of action. Count One asserts liability under 12 C.F.R. § 1024.41(b) for Defendants' failure to exercise reasonable diligence to complete a loss mitigation application. Counts Two and Three assert liability under 12 C.F.R. § 1024.35(e) against USAA and Nationstar, respectively, for failing to properly respond to Plaintiff's notice of error, perform a reasonable investigation, or correct Plaintiff's asserted errors. Count Four asserts liability against Nationstar under Ohio's Consumer Sales Practices Act ("CSPA"),

Ohio Revised Code § 1345.01, *et seq*. Count Five asserts liability against Nationstar under Ohio's Residential Mortgage Lending Act ("RMLA"), Ohio Revised Code § 1322, *et seq*.

USAA moves to dismiss the Amended Complaint and Nationstar moves for judgment on the pleadings. For the reasons discussed below, Nationstar's Motion for Judgment on the Pleadings (Doc. 20) and USAA's Motion to Dismiss (Doc. 17) are both denied.

**Count One: § 1024.41 Loss Mitigation Procedures**

Plaintiff alleges Defendants violated 12 C.F.R. § 1024.41 when they failed to exercise reasonable diligence reviewing Plaintiff's loss mitigation application by repeatedly requesting information and documents they already had, failing to implement a system that allowed Nationstar employees to view documents submitted to the USAA website, and subjecting Plaintiff to excessive hold times, unresponsive customer service agents, and inconsistent statements. (Doc. 15 at ¶¶ 102-04). Plaintiff alleges Nationstar and USAA acted in concert while reviewing his loss mitigation application.

"Congress enacted RESPA 'in part to provide more effective advance disclosure to home buyers and sellers of settlement costs, and in response to abusive practices in the real estate settlement process.'" *Martini v. JPMorgan Chase Bank, N.A*., 634 F. App'x 159, 163 (6th Cir. 2015) (quoting *Mellentine v. Ameriquest Mortg. Co*., 515 F. App'x 419, 424 (6th Cir. 2013) (further quotation marks and citation omitted)). "Although the 'settlement process' targeted by the statute was originally limited to the negotiation and execution of mortgage contracts, the scope of the statute's provisions was expanded in 1990 to encompass loan servicing." *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 719 (6th Cir. 2013) (quoting *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012)). "As a remedial statute, RESPA is construed broadly to effectuate its purposes." *Id*.

RESPA's implementing regulation (Regulation X) requires servicers to "exercise reasonable diligence in obtaining documents and information" to complete a loan modification application. *Id.* § 1024.41(b)(1). The regulation does not define "reasonable diligence," but courts have found that "a servicer may fail to exercise reasonable diligence if it repeatedly requests documents it already possesses[.]" *Schoen v. Bank of Am., N.A.*, 2019 WL 590882, at *7 (S.D. Ohio) (quoting *Benner v. Wells Fargo Bank, N.A.*, 2018 WL 1548683, at *11 (D. Me.)). "[T]he crux of a § 1024.41(b)(1) 'reasonable diligence' claim is that a [servicer] erroneously requested documents or information it already had or should not have otherwise requested." *Jackson v. Bank of Am., N.A.*, 2019 WL 7288508, at *4 (W.D.N.Y.). Further, the regulation provides that "[a] servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(i). It defines a complete loss mitigation application as "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower". 12 C.F.R. § 1024.41(b)(1). 12 C.F.R. § 1024.41(a) provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))."

Once a complete loss mitigation application is submitted, RESPA imposes additional requirements on the servicer to review and provide notice to the borrower. *See* 12 C.F.R. § 1024.41(c)(1), (c)(3). The servicer must review the application and provide written notice to the borrower within 30 days stating its determination and, if an application is denied, include the specific reasons for the denial. 12 C.F.R. § 1024.41(d). Finally, once a complete loss mitigation

application is filed, a servicer can only file a foreclosure action after meeting certain criteria. 12 C.F.R. § 1024.41(f).

Nationstar

Nationstar asserts it exercised reasonable diligence concerning the May 2021 Application and further contends the reasonable diligence requirement did not apply to any subsequent application because they were duplicative requests. (Doc. 20, at 6-7). As to Plaintiff's allegations regarding Nationstar employees not having access to USAA's Website, Nationstar argues "RESPA's reasonable diligence requirement does not apply to the loss mitigation 'system' Nationstar utilizes to review loss mitigation applications and Plaintiff cannot recast an alleged violation of 12 C.F.R. § 1024.38 as a violation of 12 C.F.R. § 1024.41." *Id.* at 6-7.

Plaintiff submitted a loss mitigation application on or around May 19, 2021. (Doc. 15 at ¶ 29). After some correspondence between the parties, Nationstar received all the required documents and denied Plaintiff's loan modification request on June 18, 2021. *Id.* at ¶¶ 31-40; (Doc. 15-2, at 24-30). The events between May 19, 2021, through June 18, 2021, are not disputed.

Plaintiff alleges that during a phone call with his point of contact with Nationstar, that point of contact told him his May 2021 Application had been "re-opened" because Defendants wrongly calculated his monthly expenses. (Doc. 15 at ¶ 43). Plaintiff argues that since the May 2021 Application was "re-opened", Defendants failed to exercise reasonable diligence when they requested in August and October 2021 that he resubmit the forms he submitted with his May 2021 Application. *Id.* at ¶¶ 102, 105. A "typical" reasonable diligence claim "is that a servicer erroneously requested documents or information it already had or should not have otherwise requested." *Hurst v. Caliber Home Loans, Inc.*, 44 F.4th 418, 425–26 (6th Cir. 2022) (a servicer

who makes misleading or conflicting requests may lack reasonable diligence). Plaintiff cites several contradictory statements from Defendants. (Doc. 15 at ¶¶ 61, 65, 150, 152).

Nationstar asserts it exercised due diligence by reviewing and denying Plaintiff's May 2021 Application. (Doc. 20, at 14-16). Nationstar argues that the August and October applications were "duplicative" requests, not a continuation of Plaintiff's original Application. (Doc. 20, at 17-18). Nationstar asserts that because it exercised reasonable diligence with the May 2021 Application, it had no duty to exercise reasonable diligence regarding the "subsequent" applications submitted by Plaintiff. *Id.* at 8. "A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(i).

Nationstar cites the June 18 denial letter as proof and asks the Court to set aside Plaintiff's allegation as contradicted by the record. "When a document contradicts allegations in the complaint, rendering them implausible, 'the exhibit trumps the allegations.'" *Nolan v. Detroit Edison Co.*, 991 F. 3d 697, 707 (6th Cir. 2020) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). However, this statement from *Nolan* is conditional:

> If, on the other hand, the document provides support for both parties' version of events, we view the facts in the light most favorable to the plaintiff. *See Jones v. City of Cincinnati*, 521 F.3d 555, 561 (6th Cir. 2008) (accepting allegations in a complaint as true even where conflicts existed between those allegations and attachments to the defendants' motion to dismiss); *see also Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 442 (6th Cir. 2012) (same); *Luis v. Zang*, 833 F.3d 619, 631 (6th Cir. 2016) (resolving inconsistencies in the non-moving party's favor at the motion to dismiss stage).

*Id.* at 707-08.

The denial letter cited by Nationstar does not directly contradict Plaintiff's allegation that a Nationstar employee told him the denial was based on incorrect calculations and the Application would be "reopened". Viewing the facts in the light most favorable to Plaintiff, the Court finds Plaintiff plausibly alleges his August and October submissions were a continuation of his May 2021 application, not new, subsequent applications.

The Court now turns to Plaintiff's specific allegations that Defendants did not act with reasonable diligence in considering that application. Plaintiff cites three ways he contends Defendants failed to demonstrate reasonable diligence: (1) requesting documents already provided; (2) Nationstar (as a subservicer) lacking access to documents submitted through USAA (the master servicer)'s website; and (3) excessive hold times and difficulty reaching representatives. (Doc 15 at ¶¶ 102-04). The Court addresses each in turn.

*Duplicative Document Requests*

As mentioned above, Defendants requested documents they already had from Plaintiff multiple times related to his loss mitigation application. Here, Plaintiff submitted the requested documents with his May 2021 Application. (Doc. 15 at ¶ 37). Defendants requested the same documents concerning two additional applications on August 29, 2021, and October 13, 2021. *Id.* at ¶¶ 44-52. A "typical" reasonable diligence claim "is that a servicer erroneously requested documents or information it already had or should not have otherwise requested." *Hurst*, 44 F.4th at 425–26. The Court is satisfied Plaintiff alleged Defendants requested documents already in its possession.

*Website Access*

Plaintiff asserts Defendants failed to implement a system that allowed Nationstar employees to view documents submitted to USAA's website, which resulted in unnecessary delay

and the loss of documents or requests for the same documents multiple times. (Doc. 15 at ¶¶ 51, 103). Nationstar responds that a challenge to internal policies is not actionable under § 1024.41(b)(1), because "RESPA's reasonable diligence requirements apply only to the submission of a loss mitigation application by a borrower, not the internal policies and procedures a loan servicer, like Nationstar, might utilize to review such applications." (Doc. 20, at 18). Instead, Nationstar contends that 12 C.F.R. § 1024.38 of RESPA is the relevant provision for internal loss policies and procedures and argues that courts have agreed no private right of action exists for a violation of this section. *Id.* at 18-19.

Section 1024.38 sets forth servicing policies, procedures, and requirements, one of which is "[p]roperly evaluating loss mitigation applications." 12 C.F.R. § 1024.38(b)(2). However, in contrast to § 1024.41, § 1024.38 does not contain a private right of action. The Consumer Financial Protection Bureau explained in its official interpretation of § 1024.38:

> Ultimately, the Bureau agrees with the commenters that allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk. . . The Bureau believes that supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38 respectively, would provide robust consumer protection without subjecting servicers to the same litigation risk and concomitant compliance costs as civil liability for asserted violations of § 1024.38.

Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10696, 10778–79 (Feb. 14, 2013).

Although Nationstar is correct in its assertion that § 1024.38 lacks a private right of action, the Court finds – in taking Plaintiff's allegations as true – that requiring him to submit documents related to his loss mitigation application several times because Nationstar may or may not have had access to USAA's website is indeed relevant to his § 1024.41(b) reasonable diligence claim, even if it does not state an independent cause of action for a violation of § 1024.38.

*Excessive Hold Times and Unresponsive Customer Service Agents*

Plaintiff alleges he was subject to excessive hold times and unresponsive agents. (Doc. 15 at ¶ 30). Nothing in Regulation X provides a right to speedy hold times. Instead, 12 C.F.R. 1024.41(b)(1) only applies to a servicer's efforts in obtaining documents and information from Plaintiff. *See* 12 C.F.R. § 1024.41(b)(1). To any extent Plaintiff relies on § 1024.41(b) to establish an independent claim based on excessive hold times and unresponsive agents, the Court is not persuaded and finds this argument lacks merit.

Taking Plaintiff's factual allegations as true, as required at the pleadings stage, the Court finds Plaintiff has stated a plausible claim for a violation of 12 C.F.R. § 1024.41, and thus finds Plaintiff's Count One survives Nationstar's motion for judgment on the pleadings.

<u>USAA</u>

USAA asserts it is entitled to dismissal to Plaintiff's § 1024.41 claim because (1) USAA is not directly liable for violations under RESPA; (2) Plaintiff's claim fails as a matter of law because USAA cannot be held vicariously liable for the actions of its subservicer, Nationstar; and (3) Plaintiff has not established an agency relationship between USAA and Nationstar. (Doc. 17, at 3, 9).

*Direct Liability*

Plaintiff argues USAA is directly liable under RESPA for its conduct violating 12 C.F.R. § 1024.41. (Doc. 15 at ¶ 100). USAA contends that although Plaintiff refers to "Defendants" throughout his Amended Complaint and attached exhibits, "the conduct about which [he]

16

complains is attributable only to Nationstar." (Doc. 17, at 9). The Court disagrees and finds Plaintiff has plausibly alleged that USAA may have been directly involved.

Although Plaintiff collectively refers to USAA and Nationstar as "Defendants" throughout his Complaint regarding his loss mitigation application claim, he provides facts that implicate USAA directly. For instance, on October 18, 2021, he alleges he was told to email documents directly to a USAA email address. (Doc. 15 at ¶ 49). A few weeks later, on November 2, 2021, he alleges that during a phone call, Defendants told him Nationstar employees could not pull documents from the USAA website and required new copies. *Id.* at ¶ 51. This fact is supported by Nationstar's first response to Plaintiff's notice of error in which it stated, "[Nationstar] [is] unable to speak on the servicing of the prior servicer." (Doc. 15-12, at 2). Plaintiff asserts that previous servicer was USAA. (Doc. 15, at ¶ 24; Doc. 15-1). Therefore, it follows USAA was at least partially involved.

Further evidence of USAA's direct involvement includes reference to USAA in the letterhead, mailing addresses, website information, and signature lines of the exhibits attached to the Complaint. USAA asserts "that all of Plaintiff's communications were sent to Nationstar not USAA FSB" (Doc. 17, at 9). But, between May 19, 2021, and April 8, 2022, all correspondence sent to Plaintiff contained a USAA letterhead, email address, physical address, and signatures from USAA. *See* Docs. 15-2 through 15-8. In the documentation currently before the Court, it was not until June 14, 2023, that a Nationstar letterhead was used for the first time. *See* Exhibit 15-12. This was after USAA assigned the Loan to Nationstar. The USAA letterheads and addresses used prior are illustrated below.



Submit your information to us as soon as possible so we can complete the review process.

- Online -    www.usaa.com
- Email -     modification.assistance@homeusaa.com
- Fax -       855-294-9270
- Mail -      USAA Federal Savings Bank
              c/o Nationstar Mortgage LLC
              Attn: Loan Modification Processing Unit
              P.O. Box 610790
              Dallas, TX 75261

In its Motion to Dismiss, USAA states, "the [Amended] Complaint demonstrates the lack of direct liability on the part of USAA FSB. Plaintiff's attempt to reconfigure and manipulate the facts surrounding the dispute is ineffective and fails as a matter of law." (Doc. 17, at 9). USAA does not rebut Plaintiff's specific factual allegations concerning its direct liability in its motion to dismiss. Taking the facts in the Amended Complaint as true, the Court finds Plaintiff has provided "factual content that allows the court to draw the reasonable inference [USAA] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

*Vicarious Liability and Agency Relationship*

USAA contends the text of RESPA "plainly and unambiguously shields" it from any vicarious liability. (Doc. 17 at 9). USAA also asserts no agency relationship existed between it and Nationstar. (Doc. 17, at 5).

The issue of whether vicarious liability exists under RESPA has yet to be addressed extensively; only the Fifth Circuit and a few district courts have addressed it. The results are divided, but most courts have found that liability under RESPA and Regulation X is limited to "servicers" and not to those servicers' principals. *See Walker v. PHH Mortg. Corp.*, No. 22-CV-

23276, 2023 WL 1778514, at *4 (S.D. Fla.) (collecting cases) *Christiana Tr. v. Riddle*, 911 F.3d 799, 804 (5th Cir. 2018) ("by its plain terms [Regulation X] . . . imposes duties only on servicers."); *see also* 12 C.F.R. § 1024.41(c)(1) ("[W]ithin 30 days of receiving the complete loss mitigation application, a *servicer* shall ...')." (emphasis added).

The court in *Rouleau v. US Bank*, an unpublished opinion from the District of New Hampshire, held RESPA allows for vicarious liability. 2015 WL 1757104, at *7 (D. N.H.) There, the court held that RESPA created "a species of tort liability." *Id.* (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999)). The court observed that "when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules." *Id.* (quoting *Meyer v. Holley,* 537 U.S. 280, 285 (2003)). Unless Congress has "expressed a contrary intent," its statutorily created torts "incorporate those rules." *Id.* (quoting *Meyer*, 537 U.S. at 287).

RESPA defines a "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)," 12 U.S.C. § 2605(i)(2); "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan," *id.* § 2605(i)(3). A subservicer is a servicer that does not own the right to perform servicing but performs servicing on behalf of the master servicer. *Id.* § 1024.31. Servicers must, in addition to adhering to certain other requirements, comply with the regulations promulgated by the Consumer Financial Protection Bureau. *Id.* § 2605(k)(1)(E).

In addressing the agency question, the Fifth Circuit stated:

To determine whether an agency relationship exists, the Supreme Court looks to the Restatement of Agency, which requires both the principal's control over the

agent and both parties' consent to the agent's acting on the principal's behalf. (citing [*Meyer*], 537 U.S. 280 at 286; *see also* Restatement (Third) of Agency § 1.01 cmt. f(1) (2006) ("An essential element of agency is the principal's right to control the agent's actions. ... The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents.").

*Christiana*, 911 F.3d 799 at 803.

The Court does not feel it is necessary to wade into the vicarious liability split at this time because the Court cannot determine USAA's role at this stage of the proceedings. If USAA was directly involved in the servicing, vicarious liability and agency may be moot. Because the Court cannot yet definitively determine USAA's role, it should not decide whether USAA could be vicariously liable or whether an agency relationship existed between it and Nationstar. USAA can revisit these arguments at a later point in the proceedings. The Court denies USAA's motion to dismiss because it finds Plaintiff has alleged facts to show that USAA and Nationstar may have acted in concert during the loss mitigation application.

## Count Two: § 1024.35 Notice of Error Against USAA

Plaintiff claims USAA did not properly respond to the June 2023 notice of error as required under 12 C.F.R. § 1024.35 of Regulation X of RESPA when it failed to acknowledge receipt of the notice nor provide a substantive response. (Doc. 15 at ¶¶ 119, 122, 124). USAA does not explicitly address this in its motion to dismiss, but because Plaintiff addresses the claim on the merits, the Court does so as well.

RESPA allows a borrower to submit a "Qualified Written Request" or "QWR" to their loan servicer requesting "information relating to the servicing of such loan." 12 U.S.C. § 2605(e)(1)(A). RESPA requires a servicer to acknowledge such an inquiry within five business days of receiving the request and substantively respond within 30 business days. 12 U.S.C. § 2605(e)(1)-(2). The servicer is entitled to an extension of fifteen business days so long as it provides the borrower with

notice of, and the reason for the extension within the initial thirty-day period. *Id.* § 1024.35(e)(3)(ii). A QWR letter must identify the loan and include "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B). Section 1024.35 identifies eleven categories of errors that trigger a loan servicer's obligation to investigate and respond. 12 C.F.R. § 1024.35(b)(1)-(11).

A QWR that asserts an "error relating to the servicing of a mortgage loan" is called a Notice of Error. 12 C.F.R. § 1024.35(a). Once notified, a servicer must respond by either:

A. Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

B. Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

12 C.F.R. § 1024.35(e)(1)(i).

Under § 1024.35(g)(1), a servicer is not required to comply with the notice of error requirements if the servicer determines that there was a (1) duplicative notice with which the servicer previously fully complied; (2) the notice of error is overbroad; and (3) an untimely notice of error delivered to the servicer *more than one year after* "*[s]ervicing for the mortgage loan that is the subject of the asserted error was transferred from the servicer receiving the notice of error to a transferee servicer*; or the mortgage loan is discharged." *Id.* at (i)-(iii) (emphasis added). RESPA continues:

If a servicer determines that, pursuant to this paragraph (g), the servicer is not required to comply with the requirements of paragraphs (d), (e), and (i) of this section, the servicer shall notify the borrower of its determination in writing not later than five days (excluding legal public holidays, Saturdays, and Sundays) after

21

making such determination. The notice to the borrower shall set forth the basis under paragraph (g)(1) of this section upon which the servicer has made such determination.

*Id.* at (g)(2).

Here, based on the allegations of the Amended Complaint, USAA was required to respond to Plaintiff's notice of error for at least two reasons. First, none of the situations exempting USAA from responding apply. The only pertinent exemption is when a loan assignment takes place. However, USAA assigned the Loan to Nationstar on August 22, 2022, and the USAA notice of error was sent on June 2, 2023, well within one year. Moreover, even if USAA thought it was exempt from responding, it was still required to send notice within five days to the borrower informing him. § 1024.35(g)(2). As stated above, the Court has rejected USAA's argument that the Amended Complaint does not plausibly allege direct liability. Therefore, Plaintiff plausibly alleges USAA failed to conduct a reasonable investigation as required under RESPA, and Plaintiff's second claim survives USAA's Motion to Dismiss.

**Count Three: § 1024.35 Notice of Error Against Nationstar**

Plaintiff's third cause of action alleges Nationstar failed to properly respond to the Notice of Error Plaintiff sent as required under 12 C.F.R. § 1024.35 of Regulation X of RESPA. Specifically, Plaintiff alleges (1) Nationstar failed to perform a reasonable investigation into the notice of error and (2) Nationstar's second response was untimely by three days. (Doc. 15 at ¶¶ 143-157). Nationstar disagrees with Plaintiff's claim that it did not conduct a reasonable investigation into the notice and states that it "conducted not one, but two reasonable investigations into the alleged errors". (Doc. 20, at 14-15). Moreover, Nationstar asserts Plaintiff did not suffer

actual damages from the second response since it was only three days late, and consequently, Plaintiff lacks standing. *Id.* at 12-13

"The key requirement is that the loan servicer conduct a 'reasonable investigation,' meaning, at a minimum, a 'search or inquiry . . . to test the validity of [the borrower's] complaints.'" *Poynter v. Rushmore Loan Mgmt. Servs. LLC*, 2022 WL 787870, at *6 (S.D. Ohio) (quoting *Marais* 24 F. Supp. 3d at 724). "Merely providing documents and a statement that there are no errors is not enough." *Id*. As another court explained: "[w]hether a given investigation was reasonable strikes the Court as an inquiry ill-suited to resolution at the motion to dismiss stage." *Becker v. PennyMac Loan Servs., LLC*, 583 F. Supp. 3d 1090, 1100 (S.D. Ohio 2022).

*Notice of Error and Nationstar's First Response*

On June 2, 2023, Plaintiff, through his counsel, sent Nationstar a notice of error and asserted (1) "Nationstar failed to exercise reasonable diligence to complete the Application"; (2) "Nationstar failed to properly notarize or otherwise implement the LMA"; and (3) "Nationstar improperly reported negative credit information to credit reporting agencies or otherwise misrepresented to [Plaintiff] that they would not do so." (Doc. 15 at ¶ 141; Doc. 15-11, at 2-5). Plaintiff demanded Nationstar correct any derogatory credit information on Plaintiff's account related to his reinstatement payment, provide sufficient compensation to Plaintiff to compensate for damages he incurred being denied a new mortgage loan, and provide compensation to cover legal fees associated with preparing the notice of error. (Doc. 15-11, at 5-6).

On June 14, 2023, Nationstar timely sent its first response to the notice of error.[3] *See* Doc. 15-12. In it, Nationstar attached a previous letter explaining it could not speak on the servicing of

---

2. Notably, this letter contains a letterhead directly from Nationstar instead of USAA for the first time in the documentation currently before the Court.

the prior servicer. (Doc. 15-11, at 2). Nationstar did not respond substantively to Plaintiff's allegation of error in the loss mitigation application; namely, the "reopening" of the May 2021 Application. (Doc. 15-12, at 2-4). In the notice of error, Plaintiff explained the issues faced while getting the LMA notarized. Specifically, he alleged Nationstar gave him contradictory information regarding whether Kelly's signature was required during phone conversations. *Id.* at 4. Nationstar did not address the conflicting statements about Kelly's signature. *See* Doc. 15-12. Lastly, regarding Plaintiff's allegation that he was told his reinstatement payment would not be reported as late to credit agencies, Nationstar provided a boilerplate statement about how credit is reported. *Id.* at 3. "Merely providing documents and a statement that there are no errors is not enough." *Poynter*, 2022 WL 787870, at *6.

The Court finds Plaintiff has plausibly alleged Nationstar did not conduct a reasonable investigation before its first response to his June 2 notice of error.

*Nationstar's Second Response*

On or around August 14, 2023, Plaintiff received Nationstar's second response.[4] *See* Doc. 15-13. Plaintiff again asserts Nationstar did not fully address Plaintiff's alleged errors. (Doc. 15 at ¶ 150). Plaintiff states the second response contains multiple false and contradictory statements and alleges he possesses telephone call recordings confirming this. *Id.* at ¶¶ 150-51. In its motion, Nationstar argues it fully complied with its duties to conduct a reasonable investigation under 12 C.F.R. § 1024.35. (Doc. 20, at 16). It further contends Plaintiff's disagreement with the outcome of the investigation does not give rise to a claim under RESPA. *Id.* at 16-17.

---

3. A dispute exists over whether Nationstar properly requested additional time to respond to the notice of error under section 1024.35(e)(3)(ii). (Doc. 15, at ¶ 149). The Court finds the dispute irrelevant for evaluating the claim because Plaintiff addressed the notice of error substantively.

Compared to Nationstar's first response, the second response contained significantly more information. *See* Doc. 15-13. Nationstar addressed Plaintiff's May 2021 Application from May 19, 2021, through June 15, 2021. *Id.* at 2-3. In the Amended Complaint, Plaintiff points out Nationstar did "not address its actions from June 16, 2021, through December 27, 2021", a central issue in the notice of error. (Doc. 15 at ¶ 152). Next, in response to Plaintiff's assertion of error regarding the contradictory instructions he received regarding whether Kelly's signature was required, the second response stated Nationstar told Plaintiff Kelly's signature was needed during a March 17, 2022, phone call. (Doc. 15-13, at 4). Lastly, Nationstar disputes that it misrepresented to Plaintiff that it would not report his reinstatement payment to credit reporting agencies.[5] *Id.*

Although Nationstar's second response provided additional details addressing Plaintiff's notice of error, the Court again finds that it cannot, at this early stage in the proceedings, resolve whether Nationstar is entitled to judgment in its favor under RESPA. The Court reiterates that "[w]hether a given investigation was reasonable . . . [is] an inquiry ill-suited to resolution at the motion to dismiss [or motion for judgment on the pleadings] stage." *Becker, LLC*, 583 F. Supp. 3d at 1100.

*Plaintiff's Standing*

Nationstar argues that although its second response was untimely by three days, Plaintiff's Section 1024.35 claim must fail because he has not suffered actual damages and, therefore, lacks standing to sue. (Doc. 20, at 13).

RESPA allows recovery of, among other things, "actual damages," 12 U.S.C. § 2605(f)(1), a term the statute does not define. Considering RESPA's remedial nature, the Sixth Circuit has

---

5. Plaintiff claims he has recordings of Nationstar's contradictory statements. (Doc. 15 at ¶ 151). Those recordings may elucidate what Plaintiff was told on the phone, but they are not presently before the Court.

given the term "generous treatment." *Marais*, 24 F. Supp. 3d at 728 (citing *Mellentine*, 515 F. App'x at 419, *Houston v. U.S. Bank Home Mortg. Wis. Servicing*, 505 F. App'x 543 (6th Cir. 2012)). The term extends to "all provable injuries" resulting from a servicer's inappropriate response to a notice of error. *Id.* "Or, to put a finer point on it, all expenses, costs, fees, and injuries fairly attributable to [the servicer's] failure to respond appropriately to the QWR, even if incurred before the failure to respond, are included." *Id.* A borrower may recover actual damages resulting from the servicer's noncompliance with the regulation and statutory damages if the servicer has a pattern or practice of noncompliance. *See* 12 U.S.C. § 2605(f). Moreover, the Sixth Circuit has held that, under some circumstances, the cost of preparing a QWR to which the response is inadequate may sometimes constitute actual damages. *See Marais*, 736 F.3d at 721 (directing the district court to "consider th[e] argument" that "costs [the plaintiff] incurred associated with preparing her QWR . . . became actual damages when Chase ignored its statutory duties to adequately respond"); *Braat v. Wells Fargo Bank, N.A.*, 2015 WL 5225604, at *2 (W.D. Mich.) (allowing a RESPA claim alleging damages of accrued "arrearage resulting from Defendant's actions and costs and attorney fees" to survive a motion to dismiss); *Billings v. Seterus*, 2015 WL 1885627, at *3 (W.D. Mich.) (denying dismissal of a RESPA claim alleging "monetary damages in the amount [plaintiff] owes in arrears and costs and attorney fees"); *Mellentine*, 515 F. App'x 419 at 425 ("[b]ecause the complaint alleges that [defendant] submitted its response to the QWR after the statutory time period, the [plaintiffs'] claim sufficiently sets forth facts upon which relief can be granted.)

      To have standing to sue in federal court, a plaintiff must show that: (1) he "suffered an 'injury in fact'"; (2) "a causal connection between the injury and the conduct complained of"; and

(3) it is likely that his injury will be redressed by the court's decision in his favor. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted).

Here, Nationstar's second response was three days late; therefore, Plaintiff "sufficiently sets forth facts upon which relief can be granted." *Mellentine*, 515 F. App'x 419 at 425. Additionally, Plaintiff alleges he suffered damages in late fees and legal fees for submitting the requests for information and notice of errors. (Doc. 15 at ¶ 89). Plaintiff also attached several consumer complaints alleging similar patterns or practices committed by Nationstar. (Doc. 15 at ¶¶ 93-95); (Doc. 15-16); *See* 12 U.S.C. § 2605(f) ("[a] borrower may recover actual damages resulting from the servicer's noncompliance with the regulation and statutory damages if the servicer has a pattern or practice of noncompliance.")

The Court finds it cannot determine as a matter of law the reasonableness of Nationstar's responses at this juncture. Moreover, Plaintiff sufficiently alleged damages to satisfy standing. Nationstar may revisit these issues on summary judgment. Nationstar's motion to dismiss Count Three is denied.

## Count Four: CSPA Violation Against Nationstar

Plaintiff asserts Nationstar violated the Ohio Consumer Sales Practices Act when it committed unfair, deceptive, and unconscionable acts through by refusing to provide written confirmation that the Loan was in forbearance and by failing to reasonably investigate Guzman's errors as asserted in the June 2 Notice of Error. (Doc. 15 at ¶ 172-73). Nationstar, mainly in reliance on *Anderson v. Barclay's Capital Real Estate, Inc.*, 989 N.E.2d 997 (Ohio 2013), contends that because Plaintiff's CSPA claim is directed at its actions as a servicer, and not a non-bank lender, it fails as a matter of law since its actions as a servicer are outside the scope of the CSPA. (Doc. 20, at 17-18).

Ohio's Consumer Sales Practices Act imposes liability on any "supplier" who "commit[s] an unfair or deceptive act" in connection with a "consumer transaction." Ohio Rev. Code § 1345.02(A). "No supplier shall commit an unconscionable act or practice concerning a consumer transaction in connection with a residential mortgage. Such an unconscionable act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.031(A).

In *Anderson*, the Ohio Supreme Court addressed the two following questions on certification from this Court:

1. Does the servicing of a borrower's residential mortgage loan constitute a "consumer transaction" as defined in the Ohio Consumer Sales Practices Act, R.C. [§] 1345.01(A)?

2. Are entities that service residential mortgage loans "suppliers . . . engaged in the business of effecting or soliciting consumer transactions" within the meaning of the Ohio Consumer Sales Practices Act, R.C. § 1345.01(C)?

989 N.E.2d at 999.

As to the first question, the Ohio Supreme Court held that while a servicer's duties may involve direct and indirect interactions with borrowers on behalf of the financial institution," there is no actual "contract between the borrower and the mortgage servicer." *Id.* at 1000. Moreover, it opined "mortgage servicing, similar to appraisal services and title services, is a 'collateral service' associated with a pure real estate transaction. Except for the transactions specified in the statute, the CSPA does not apply to "collateral services that are solely associated with the sale of real estate and are necessary to effectuate a 'pure' real estate transaction"; rather, transactions between mortgage-service providers and homeowners are not "consumer transactions" within the meaning of the CSPA because there is no "transfer of an item of goods, a service, a franchise, or an intangible, to an individual." *Id.* at 1000-01; *see* Ohio Revised Code § 1345.01(A).

Regarding the second question, the Supreme Court held that servicers are not suppliers under CSPA because "mortgage servicers do not seek to enter into consumer transactions with borrowers". *Id.* at 1003.

However, several courts have addressed this issue since *Anderson*. In *Bucy v. Pennymac Loan Servs., LLC*, the Southern District of Ohio addressed whether an assignee may be liable under CSPA:

> "If the consumer transaction is in connection with a residential mortgage, 'supplier' does not include an assignee or purchaser of the loan for value, except as otherwise provided in section 1345.091 of the Revised Code." *Id.* Section 1345.091, in turn, provides that a consumer may not bring a claim under the CSPA "against an assignee or purchaser of a mortgage loan for value unless ... (A) [t]he violation was committed by the assignee or purchaser[ ] [or] (B) [t]he assignee or purchaser is affiliated by common control with the seller of the loan at the time of such assignment or purchase." *Id.* § 1345.091.

2016 WL 5719804, at *10.

USAA assigned Nationstar the Loan on August 22, 2022. *See* Doc. 15-1. After that assignment, Plaintiff claims Nationstar did not send written confirmation that the Loan was in forbearance and failed to respond to his notice of error appropriately. (Doc. 15, at ¶¶ 172-73). Unlike in *Anderson*, a contractual relationship existed here between Nationstar and Plaintiff. Therefore, the Court concludes, at this early stage in the proceedings, it cannot grant Nationstar's dismissal on the ground that its actions were those of a servicer and not an assignee.

**Count Five: RMLA Violation Against Nationstar**

Lastly, Plaintiff raises a state law claim under the Residential Mortgage Lending Act, Ohio Revised Code §§ 1322.40 and 1322.45, against Nationstar. Plaintiff asserts Nationstar violated Ohio Revised Code § 1322.40(B) by making false, misleading, and/or inconsistent statements relating to "the Loan's forbearance, [his] request for a permanent modification, and [his] ability to obtain a loan for his planned purchase of a new home." (Doc. 15 at ¶ 190). He asserts Nationstar

violated Ohio Revised Code sections 1322.40(C) and 1322.45(A) by failing to (1) exercise reasonable care during the loss mitigation process, (2) perform a reasonable investigation into his notice of error, (3) provide a competent mobile notary, (4) provide written confirmation the Loan was in forbearance, and (4) properly report his credit score. (*Id.* at ¶ 192).  Regarding the loss mitigation application and notice of error allegations, Nationstar contends because it complied with RESPA's 12 C.F.R. §§ 1024.41 and 1024.35 provisions, it cannot be held liable under the RMLA. (Doc. 20, at 19-22). Nationstar asserts Plaintiff's remaining RMLA claims fail as a matter of law. *Id.* at 27.

At the outset, the Court notes that because it finds Plaintiff's RESPA claims based on 12 C.F.R. §§ 1024.41 and 1024.35 survive, Nationstar's argument that compliance with RESPA makes it entitled to judgment on the RMLA claim is not well-taken. The Court addresses Nationstar's other arguments individually below.

<u>Ohio Rev. Code § 1322.40(B)</u>

Plaintiff alleges Nationstar violated Ohio Revised Code § 1322.40(B) by making false, misleading, and/or inconsistent statements about "the Loan's forbearance, [his] request for a permanent modification, and [his] ability to obtain a loan for his planned purchase of a new home." *Id.* at ¶ 190.

Ohio Revised Code § 1322.40(B) prohibits a registrant, licensee, or person required to be registered or licensed from "mak[ing] false or misleading statements of a material fact, omissions of statements required by state or federal law, or false promises regarding a material fact, through advertising or other means, or engag[ing] in a continued course of misrepresentations".

The Court has already determined above Plaintiff plausibly alleged Nationstar made misleading or inconsistent statements regarding Plaintiff's request for a permanent modification

30

and the Loan's forbearance (when Defendants told him they intended to continue with foreclosure but later provided him with another three-month Covid forbearance). (Doc. 15 at ¶ 42). As such, the Court will now proceed to assess whether Plaintiff plausibly alleged Nationstar made misleading or inconsistent statements related to his attempt to get a new loan.  Nationstar asserts Plaintiff has alleged he attempted to get a loan from USAA, not Nationstar. (Doc. 20, at 32).

Plaintiff alleges Defendants stated that USAA would give him a new loan. (Doc. 15 at ¶ 84). Plaintiff, as this Court has already determined, was not aware which Defendant stated that. Plaintiff mentions this in his opposition brief and even concedes this claim may not survive against Nationstar: "the information available to Guzman shows that representatives of both defendants communicated with Guzman. Should discovery show that Nationstar had no part in making representations about Guzman's eligibility for a new home loan, Guzman will not pursue such claims." (Doc. 24, at 27). Plaintiff has set forth plausible allegations that he received inconsistent and misleading information regarding the new loan – namely, that after Defendants informed him they would give him a loan, they later required him to modify and make monthly payments. *Id.* Therefore, the Court finds Plaintiff's Ohio Revised Code § 1322.40(B) claim survives in its entirety at this stage.

<u>Ohio Rev. Code §§ 1322.40(C) and 1322.45(A)</u>

Plaintiff asserts Nationstar violated Ohio Revised Code § 1322.40(C) and that Nationstar's violations of RESPA constitute violations of Ohio Revised Code § 1322.45(A)(3) and (4) when it failed to (1) exercise reasonable care during the loss mitigation process, (2) perform a reasonable investigation into his notice of error, (3) provide a competent mobile notary, (4) provide written confirmation the Loan was in forbearance, and (5) properly report his credit score. (Doc. 15 at ¶ 192).

31

Ohio Rev. Code § 1322.40(C) prohibits "conduct that constitutes improper, fraudulent, or dishonest dealings." Ohio Rev. Code § 1322.45(A)(3) and (4) states:

> A.  A registrant, a licensee, and any person required to be registered or licensed under this chapter, in addition to duties imposed by other statutes or common law, shall do all of the following:
>
> * * *
>
> 3.  Act with reasonable skill, care, and diligence;
> 4.  Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan.

To succeed on a RMLA claim, a Plaintiff must show a resulting injury. Ohio Rev. Code § 1322.52 (A)(1).

The RMLA provides distinct causes of actions to parties injured by violations of § 1322.40 and § 1322.45. *Compare* Ohio Rev. Code § 1322.45(D)(1) ("A buyer injured by a failure to comply with this section may bring an action for recovery of damages."), *with id.* § 1322.52(A)(1) ("A buyer injured by a violation of section 1322.07, 1322.40, or 1322.46 of the Revised Code may bring an action for recovery of damages."). But the RMLA prohibits a party from recovering under both § 1322.40 and § 1322.45 for the same misconduct. *See id.* §§ 1322.45(E); 1322.52(G).

Plaintiff alleges the same misconduct by Nationstar violated both Ohio Rev. Code § 1322.40(C) and § 1322.45(A). The Court will first apply the standard in § 1322.45(A) and examine whether Plaintiff plausibly alleges Nationstar's actions constituted a lack of reasonable skill, care, diligence, or good faith.

*Loss Mitigation Process and Notice of Error*

For the same reasons stated above, the Court finds that Plaintiff has plausibly alleged the loss mitigation application and notice of error violations of RESPA. The Court also finds that Plaintiff has plausibly alleged these actions violate Ohio Rev. Code §§ 1322.40(C) and 1322.45(A). The Court therefore turns to the three remaining claims.

*Mobile Notary. Written Confirmation, Credit Score*

First, Plaintiff claims Defendants failed to provide a competent notary to sign the second LMA and thus implement the LMA. (Doc. 15 at ¶ 65). Nationstar asserts the LMA rejection had nothing to do with the notary's actions, and instead asserts it rejected the LMA because Kelly's signature was missing. (Doc. 22, at 23). Plaintiff's Amended Complaint states Defendants told him Kelly's signature was not required on two separate occasions because they already had his divorce decree, and the real reason they rejected the LMA was because their mobile notary failed to notarize it properly. (Doc. 15 at ¶¶ 61, 65).

Second, Plaintiff alleges Nationstar violated the RMLA when it failed to provide written confirmation that showed his loan was in forbearance after promising it would provide such confirmation. (Doc. 15 at ¶ 87). Nationstar asserts it had no duty to provide Plaintiff with this written confirmation (Doc. 20, at 33)  and that "[o]nly pleading that [Nationstar] broke an alleged agreement without more does not allow for the conclusion that [Nationstar] acted unreasonably or not in good faith in violation of the RMLA." (Doc. 25, at 13).

Third, Plaintiff contends Nationstar violated the RMLA when it reported derogatory credit information to credit reporting agencies after promising him it would not do so. (Doc. 15 at ¶ 67). Nationstar asserts Plaintiff failed to plead a claim, and even if he did, he has not shown he suffered damages as required under Ohio Rev. Code Ann. § 1322.52 (A)(1). (Doc. 20, at 31). Plaintiff alleges damages in the form of higher interest rates and severe emotional distress. (Doc. 15 at ¶ 87(d), (f)-(g)).

In all three instances Plaintiff alleges Nationstar expressed one thing to Plaintiff but later failed to deliver on its promise. The Court finds such allegations plausibly plead a failure to act

reasonably or in good faith. The Court therefore finds Plaintiff alleges a plausible inference that Nationstar violated Section 1322.45(A).

"Given the interplay between the two claims under the well-pleaded factual allegations in the Complaint, the Court concludes that dismissal of the § 1322.40(C) is unwarranted for the same reasons discussed in the context of [Plaintiff's] § 1322.45(A) claim. . . .  It was unreasonable (and by implication improper as the Complaint appears to be using that term for [Nationstar to make promises but later fail to deliver on those promises])". *Steele v. Cmty. Loan Servicing, LLC*, 2024 WL 37116, at \*7 (S.D. Ohio) (internal citation omitted). As in the instant case, the loan servicer in *Steele*, Community Loan Servicing, LLC, asserted it did not act "improperly" in response to the plaintiff's Ohio Rev. Code §§ 1322.40(C) claim. However, the court held "[t]hese arguments boil down to the same objection: Community has a viable defense that it did not act improperly. But that Community has a viable defense—and possibly the better narrative—is not a basis for dismissing the Complaint.". *Steele*, 2024 WL 37116, at \*7. Ultimately, this Court agrees with the *Steele* court and acknowledges the standards set forth in Ohio Rev. Code §§ 1322.40(C) and 1322.45(A) involving whether conduct was "improper" or "unreasonable" are not well-suited for judgment on the pleadings. *Mulkey v. RoundPoint Mortg. Serv. Corp.*, 2021 WL 5804575, at \*4 (N.D. Ohio) ("While Defendant denies these allegations and states they made no false or misleading statements, such defenses [to the RMLA § 1322.40(C) claim] may be raised in a summary judgment motion.").

Therefore, although the factual allegations in the Amended Complaint are slim, the Court finds Plaintiff has plead a plausible interference that Nationstar violated Ohio Revised Code §§ 1322.45(A) and 1322.40(C) and his RMLA claim survives.

**CONCLUSION**

For the foregoing reasons, good cause appearing, it is

ORDERED that Nationstar's Motion for Judgment on the Pleadings (Doc. 20) be, and the same hereby is, DENIED; and it is

FURTHER ORDERED that USAA's Motion to Dismiss (Doc. 17), be and the same hereby is, DENIED.

 *s/ James R. Knepp II*
UNITED STATES DISTRICT JUDGE

Dated: 5/3/2024